# United States District Court
## for the Northern District of Oklahoma

---

Case No. 26-cv-264-JDR-SH

---

DARIEN V.M.,

*Petitioner,*

*versus*

DAVID VENTURELLA, *Acting Director, United States Immigration and Customs Enforcement,*[1] MARKWAYNE MULLIN, *Secretary, United States Department of Homeland Security,* ROBERT CERNA, *Field Office Director, Dallas Field Office, United States Immigration and Customs Enforcement,* TODD BLANCHE, *Acting United States Attorney General, and* VIC REGALADO, *Sheriff of Tulsa County,*

*Respondents.*

---

## OPINION AND ORDER

---

Immigration and Customs Enforcement, an operational component of the Department of Homeland Security, took Petitioner Darien V.M. into immigration custody in April 2026 pursuant to an administrative warrant issued under 8 U.S.C. § 1226(a), following a traffic stop in Oklahoma. They have detained him since under 8 U.S.C. § 1225(b)(2)(A), a provision that mandates detention without a hearing. Petitioner seeks federal habeas relief under 28 U.S.C. § 2241 through a Verified Emergency Petition for Writ of Habeas Corpus, claiming he is unlawfully detained and seeking, *inter alia,* his immediate

---

[1] David Venturella replaced Todd Lyons as acting director of Immigration and Customs Enforcement, effective May 31, 2026. The Court therefore substitutes David Venturella, Acting Director, United States Immigration and Customs Enforcement, in place of Todd Lyons as Party Respondent. Fed. R. Civ. P. 25(d). The Clerk of Court shall note on the record this substitution.

No. 26-cv-264

release from DHS custody. Dkts. 2, 10. Petitioner claims ICE violated his Fifth Amendment right to due process by detaining him without a pre-deprivation hearing and, in the alternative, that because his detention is authorized under 8 U.S.C. § 1226(a), not § 1225(b)(2)(A), he is entitled to a bond redetermination hearing.[2] *Id.*

Respondents Acting ICE Director David Venturella, DHS Secretary Markwayne Mullin, ICE Dallas Field Office Director Robert Cerna, and Acting United States Attorney General Todd Blanche (collectively "Respondents") oppose the petition, asserting Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2)(A), and thus not entitled to a bond redetermination hearing, and will receive due process through his pending immigration removal proceeding. Dkt. 8.[3]

---

[2] Petitioner expressly identifies only the Fifth Amendment claim but expends considerable effort challenging the statutory basis for his detention, arguing he can be detained only under § 1226(a). Dkt. 2 at 13-20; Dkt. 10 at 2-3. Because Petitioner has counsel, the Court will not liberally construe his petition. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that courts must liberally construe pleadings filed by pro se litigants). And the Court is mindful of the Supreme Court's admonition to "adhere to the principle of party presentation" and "decide only the questions presented by the parties." *Margolin v. Nat'l Assoc. of Immigration Judges*, 608 U.S. ___, 146 S. Ct. 1285, 1288 (2026). Nevertheless, in all civil proceedings, a court must construe pleadings "so as to do justice," Fed. R. Civ. P. 8(e). Here, Petitioner argued at length that § 1225(b)(2)(A) does not authorize his detention, and Respondents responded by maintaining that it does. Dkts. 2, 8. On careful review of the issues framed by the parties, the Court reads the petition as presenting two questions: (1) whether Petitioner is unlawfully detained under 8 U.S.C. § 1225(b)(2)(A), *see* Dkt. 2 at 13-20; Dkt. 8 at 6-7; Dkt. 10 at 2-3; and (2) whether Petitioner is detained in violation of his Fifth Amendment right to due process because ICE did not provide him a pre-deprivation hearing, *see* Dkt. 2 at 20-26; Dkt. 8 at 7-8; Dkt. 10 at 3-7. Further, because both are questions of law and the facts are undisputed, the Court finds it unnecessary to conduct a hearing before adjudicating the petition. 28 U.S.C. § 2243.

[3] Respondent Sheriff Regalado requests dismissal from this action, asserting he is an unnecessary respondent. Dkt. 6. The Court agrees. Sheriff Regalado was properly named as a respondent because Petitioner filed the petition while he was housed at the David L. Moss Criminal Justice Center. *See* Dkt. 2 at Dkt. 6 at 1; Dkt. 8 at 5; *Padilla v. Rumsfeld*, 542 U.S. 426, 435 (2004) (explaining that when a habeas petitioner "challenges [his]

*(footnote continued)*

2

No. 26-cv-264

Having considered the record, the parties' arguments, and applicable law, the Court finds and concludes that Petitioner is detained in violation of federal law, grants in part and dismisses in part the petition, and directs Respondents to provide Petitioner a bond redetermination hearing, in accordance with 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(d)(1), on or before 5:00 p.m. on June 30, 2026.

I

Petitioner, a Cuban citizen, entered the United States in December 2023 after an immigration officer inspected him at a port of entry, determined he was inadmissible because he lacked valid entry documents, served him with a Notice to Appear for a removal proceeding before an immigration judge in mid-2026, and paroled him into the United States for two years for humanitarian reasons.[4] Dkt. 2 at 1, 10; Dkt. 2-3; Dkt. 8-2 at 1-5, 20.[5]

---

present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held"); *Leonardo G.Z. v. Noem*, 820 F. Supp. 3d 1245, 1247, n.1 (N.D. Okla. 2025) ("Sheriff Regalado was properly named as a respondent at the inception of this [immigration habeas] action because Petitioner filed the Petition while he was detained at the DLMCJC."). But ICE subsequently transferred Petitioner to the Cimarron Correctional Facility in Cushing, Oklahoma. Dkt. 19. That transfer moots any claims Petitioner may have had against Sheriff Regalado regarding his detention. *See Jones v. Cunningham*, 371 U.S. 236, 241 & n.15 (1963) (citing several cases as holding "that the dispute between the petitioner and the named respondent in each case had become moot because that particular respondent no longer held the petitioner in his custody"). The Court therefore dismisses Sheriff Regalado from this action and directs the Clerk of Court to terminate Sheriff Regalado as party respondent.

[4] *See* 8 U.S.C. §§ 1182(a)(7)(A)(i) (identifying "any immigrant at the time of application for admission" who does not have valid entry documents as inadmissible); 1182(d)(5)(A) (authorizing DHS Secretary discretion to temporarily parole into the United States, "on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States"); 1225(b) (providing for inspection of noncitizens "arriving in the United States and certain other aliens who have not been admitted or paroled"); 1229 and 1229a (governing procedures for removal proceedings).

[5] For consistency, the Court's citations refer to the CM/ECF header pagination. The Court cites all unpublished decisions for their persuasive value. Fed. R. App. P. 32.1;
*(footnote continued)*

3

No. 26-cv-264

Between February and July 2025, Petitioner applied for an adjustment of status, received authorization to work in the United States,[6] and successfully moved to terminate his removal proceeding.[7] Dkt. 2 at 10-11; Dkt. 2-2 at 1; Dkt. 2-4; Dkt. 8-1 at 2; Dkt. 8-2 at 6, 9-12, 20. To date, Petitioner's application for adjustment of status is pending. Dkt. 8-1 at 2; Dkt. 8-2 at 20; Dkt. 2-2 at 1. But his humanitarian parole automatically terminated on December 13, 2025. Dkt. 2-3; Dkt. 8-2 at 5.[8]

Roughly four months later, on April 28, 2026, Petitioner was a passenger in a vehicle stopped by an Oklahoma Highway Patrol trooper. Dkt. 2 at 10; Dkt. 8-1 at 2, 19. The trooper contacted ICE, an immigration officer determined Petitioner did "not have any approved petitions to be present in the United States" and authorized his arrest, and the trooper transported Petitioner to a county jail in Newkirk, Oklahoma. Dkt. 8-1 at 2; Dkt. 8-2 at 19.

The next day, Petitioner was transferred to the DLMCJC in Tulsa, Oklahoma, where he was booked on an ICE hold.[9] Dkt. 8-1 at 3; Dkt. 8-3. That same day, ICE took custody of Petitioner and transported him to the

---

10th Cir. R. 32.1. In addition, unless directly quoting a statute, regulation, or court decision, the Court uses the term "noncitizen" rather than the term "alien." *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (adopting use of "noncitizen" in place of "alien"); 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States").

[6] "Regulation 8 C.F.R. § 274a.12(c)(9) specifically allows adjustment of status applicants . . . to request employment authorization while their application is pending." *Guevara v. Holder*, 649 F.3d 1086, 1092 (9th Cir. 2011).

[7] An immigration judge granted Petitioner's motion to terminate his removal proceeding, reasoning that DHS did not respond to the motion or otherwise oppose it, Petitioner's parole status was valid, and it appeared Petitioner likely would be eligible for an adjustment of status. Dkt. 8-2 at 11.

[8] *See* 8 C.F.R. § 212.5(e)(1) (providing that "[p]arole shall be automatically terminated without written notice" either when the noncitizen "departs from the United States or, if not departed, at the expiration of the time for which parole was authorized").

[9] The DLMCJC, a county jail, provides temporary housing for noncitizen detainees in ICE custody under a contractual agreement between DHS and the Tulsa County Board of County Commissioners. Dkt. 6 at 1-2; Dkt. 6-1.

4

No. 26-cv-264

ICE sub-office in Tulsa for processing. *Id.* An immigration officer "determined that [Petitioner] was a citizen of Cuba with no pending or approved petitions allowing for lawful residence, admission, and or presence in the United States." Dkt. 8-2 at 19. The immigration officer served Petitioner with, *inter alia*, an administrative arrest warrant[10] and a Notice to Appear that described Petitioner as an "arriving alien,"[11] alleged he was inadmissible because he lacked valid entry documents, and ordered him to appear before an immigration judge on May 11, 2026, to show cause why he should not be removed.[12] Dkt. 8-2 at 14-17, 19-21.[13]

Petitioner filed this petition on May 6, 2026. Dkt. 2. That same day, this Court issued an Order directing Respondents to respond to the allegations in the petition. Dkt. 4. The Court also directed Respondents to "provide this Court with at least 72 hours' advance notice of any scheduled removal or transfer of Petitioner out of this Court's jurisdiction." Dkt. 4 at 2.

---

[10] *See* 8 U.S.C. § 1226(a) (governing "arrest, detention, and release" of noncitizens subject to removal from the United States).

[11] A federal regulation defines "arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. 8 C.F.R. § 1.2.

[12] On May 6, 2026, Petitioner was scheduled to appear before an immigration judge in Houston for an internet-based master hearing on May 12, 2026. Dkt. 8-2 at 23. That hearing was later rescheduled to May 26, 2026. *Id.* at 25. As directed by the Court, Petitioner and Respondents jointly informed the Court on May 27, 2026, that Petitioner's hearing had been rescheduled to June 9, 2026. Dkts. 11, 12. However, according to the Executive Office of Immigration Review, Petitioner's upcoming internet-based master hearing now is set for June 30, 2026. *See,* EOIR Automated Case Information, https://acis.eoir.justice.gov/en, last visited June 3, 2026.

[13] Petitioner alleges "ICE had no warrant and no individualized basis for [his] arrest at the time of the encounter." Dkt. 2 at 10. Because the record refutes these allegations, the Court finds it undisputed that ICE issued an administrative warrant under 8 U.S.C. § 1226 for the April 28, 2026 arrest and did so after checking Petitioner's immigration status.

5

No. 26-cv-264

Respondents responded to the petition on May 15, 2026. Dkts. 6, 8. As of that date, Petitioner was detained at the DLMCJC. Dkt. 6 at 1; Dkt. 8-1 at 3. On May 19, 2026, Respondents and Petitioner filed a Joint Notice of Transfer informing the Court that ICE transferred Petitioner to the Cimarron Correctional Facility, in Cushing, Oklahoma without providing the Court the requisite 72-hour advance notice. Dkt. 9. Petitioner replied on May 20, 2026. Dkt. 10.

## II

Petitioner challenges the lawfulness of his detention on two grounds. He claims he is detained (1) in violation of his Fifth Amendment right to due process because ICE re-detained him without providing a pre-deprivation hearing and (2) in violation of the Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), because he is not subject to mandatory detention under § 1225(b)(2)(A) but instead is subject to discretionary detention under 8 U.S.C. § 1226(a) and thus entitled to seek release through a bond redetermination hearing. Dkts 2, 10; *see supra* n.2. Respondents contend Petitioner is lawfully detained without a hearing under § 1225(b)(2)(A) and has not been denied due process. Dkt. 8.

## A

Federal courts have jurisdiction to determine whether a person in the United States, including a noncitizen detained by immigration officials, is being held "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3); *see also* 28 U.S.C. § 2241(a) (empowering federal district courts to grant habeas relief "within their respective jurisdictions"); *Boumediene v. Bush*, 553 U.S. 723, 732, 800 (2008) (Souter, J., concurring) (describing, in a habeas action brought by noncitizens designated as enemy combatants and detained at the United States Naval Station at Guantanamo Bay, Cuba, as "a basic fact of Anglo–American constitutional history: that the power, first of the Crown and now of the Executive Branch of the

No. 26-cv-264

United States, is necessarily limited by habeas corpus jurisdiction to enquire into the legality of executive detention"); *Munaf v. Green*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").[14] A noncitizen challenging his detention by the Executive Branch "bears the burden to demonstrate that no law justifies his detention or that the law that does

---

[14] Congress limits the exercise of federal habeas jurisdiction in the immigration context. *See*, e.g., 8 U.S.C. §§ 1226(e), 1252. Respondents do not suggest any limits apply. Dkts. 6, 8. Mindful of its obligation to consider the existence of subject matter jurisdiction even in the absence of any challenge, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), the Court is satisfied that no limits bar review because Petitioner presents a constitutional claim and a question of law regarding the statute that authorizes his detention. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) (holding, in a case involving a noncitizen's challenge to mandatory pre-removal detention, that § 1226(e) "contains no explicit provision barring habeas review, and . . . that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail"); *Ozturk v. Hyde*, 136 F.4th 382, 394-401 (2d Cir. 2025) (thoroughly discussing § 1252's jurisdiction-stripping provisions and finding that none barred habeas review of the petitioner's "challenges [to] her unlawful detention, pending [removal] proceedings" and relying on *Demore* and *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020), to conclude that § 1226(e) does not bar habeas review of constitutional claims or questions of law). Further, and though Respondents do not say otherwise, the Court finds Petitioner's transfer to the Cimarron Correctional Facility—a facility located in the Western District of Oklahoma, *see* 28 U.S.C. § 116(c)—does not bar this Court from exercising jurisdiction or granting appropriate relief. *See Padilla*, 542 U.S. at 447, 449-50 (reaffirming "the longstanding rule" that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should . . . file the petition in the district of confinement"); *id.* at 451-52 (Kennedy, J., concurring) (describing "[t]he phrase 'respective jurisdictions,'" as used in § 2241(a), as "a territorial restriction on the proper forum for habeas petitions" rather than a "limitation goes to the power of the court to hear the case"). Venue is appropriate here despite Petitioner's transfer because compliance with the district-of-confinement rule is determined at the time of filing and Petitioner filed the Petition while he was detained at the DLMCJC. *See Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445-47 (3d Cir. 2021) (holding that the District Court for the District of New Jersey retained "jurisdiction" when habeas petitioner was transferred outside of the district during the pendency of the case); *Pinson v. Berkebile*, 604 F. App'x 649, 652-53 (10th Cir. 2015) (citing *Padilla* and holding that "the District of Colorado acquired jurisdiction when [the petitioner] filed his habeas petition," and that his "transfer does not defeat that initial jurisdiction").

7

No. 26-cv-264

so is unconstitutional." *Cisneros v. Noem*, 820 F. Supp. 3d 1265, 1269 (D. Utah 2026) (cleaned up).

### B

Fifty years ago, the United States Supreme Court said, "There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). Both statements remain true today.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty protected by the Due Process Clause." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). And "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. But the Supreme Court "has recognized detention during [removal] proceedings as a constitutionally valid aspect of the [removal] process." *Demore*, 538 U.S. at 523. The Supreme Court also "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522; *see also Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) ("'[D]ue process is flexible,' . . . and it 'calls for such procedural protections as the particular situation demands.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))). Congress has enacted several rules for pre-removal detention of noncitizens through the INA, as amended by the IIRIRA, and those rules are implemented through federal regulations.

The Court therefore begins with Petitioner's claim that he is unlawfully detained under the INA. The Court ends there as well because, as discussed next, Petitioner persuasively contends that he is subject to discretionary detention under § 1226(a), not mandatory detention under §

No. 26-cv-264

1225(b)(2)(A), and the record shows that Respondents have not provided Petitioner the process he is due under § 1226(a). The Court need not reach Petitioner's Fifth Amendment claim.

**1**[15]

**a**

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." This section guides the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287.

The INA defines the terms "admission" and "admitted" as meaning, "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3); *see also Jennings*, 583 U.S. at 287 ("Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law.").

A noncitizen is "deemed" to be "an applicant for admission" if the noncitizen is "present in the United States" and "has not been admitted" or if the noncitizen "arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after

---

[15] Some statutes refer to duties or powers of the Attorney General, and others refer to the duties and powers of the DHS Secretary. The Department of Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, transferred many matters related to immigration detention and removal to the DHS Secretary. But no party clarifies which official has the duties and powers implicated in this case, and both the Acting Attorney General and the DHS Secretary are named as respondents. The Court therefore refers to officials as named in the relevant statutes.

No. 26-cv-264

having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

Section 1225(b)(1) governs "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." Section 1225(b)(1)(A)(i) requires expedited removal of a noncitizen who "is arriving in the United States" or "is described in" § 1225(b)(1)(A)(iii), if the examining immigration officer determines the noncitizen is inadmissible due to fraud or misrepresentation, *see* 8 U.S.C. § 1182(a)(6)(C); or (2) does not possess valid entry documents "at the time of application for admission," *see id.* § 1182(a)(7).[16] As the name implies, expedited removal contemplates that noncitizens inadmissible on these grounds will be removed "from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). But if a noncitizen subject to expedited removal "indicates either an intention to apply for asylum . . . or a fear of persecution," the immigration officer must refer the noncitizen to an asylum officer for an interview, and the noncitizen "shall be detained" pending final resolution of the asylum application and, if the application is denied, the noncitizen shall be detained "until removed." 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B).

Section 1225(b)(2) governs "[i]nspection of other aliens." Section 1225(b)(2)(A) requires detention "in the case of an alien who is an applicant for admission[] if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see also* 8 C.F.R. § 235.3(c). Subsection (b)(2)(A) does not apply to noncitizens who are subject to expedited removal under

---

[16] Section 1225(b)(1)(A)(iii) gives the Attorney General "sole and unreviewable discretion" to apply the expedited removal process to a noncitizen inadmissible on these same grounds "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under [§ 1225(b)(1)(A)]." No one suggests this provision applies to Petitioner.

10

No. 26-cv-264

subsection (b)(1)(A), alien crewmen, or stowaways. 8 U.S.C. § 1225(b)(2)(B). And the Attorney General has discretion not to apply subsection (b)(2)(A) if a noncitizen described therein "is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States." 8 U.S.C. § 1225(b)(2)(C). In that situation, the Attorney General, instead of detaining the noncitizen, may "return the [noncitizen] to that territory pending a [removal] proceeding under section 1229a." *Id.*

In addressing whether noncitizens subject to mandatory detention under § 1225(b) are entitled to bond hearings, the *Jennings* Court succinctly summarized these provisions, stating,

> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Jennings*, 583 U.S. at 297.

b

Noncitizens subject to mandatory detention under either § 1225(b)(1) or (b)(2) have a potential avenue for release. The DHS Secretary "may parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). But parole under this statute

11

No. 26-cv-264

> shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

*Id.*; *see also* 8 C.F.R. § 212.5 (providing procedures for granting and terminating parole under § 1182(d)(5)(A)); 8 C.F.R. § 235.3(c) (discussing mandatory detention and temporary parole).[17]

c

Section 1226 governs "[a]pprehension and detention of aliens" and "applies to aliens already present in the United States," *Jennings*, 583 U.S. at 288, 303. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *Jennings*, 583 U.S. at 288. Unless § 1226(c) requires detention of a

---

[17] Neither party discusses it, but the language in § 1182(d)(5)(A) that precludes parole from being "regarded as an admission" is consistent with a legal fiction, sometimes called the "entry fiction," that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are "treated" for due process purposes "as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953); and citing *Leng May Ma v. Barber*, 357 U.S. 185, 188-190 (1958); *Kaplan v. Tod*, 267 U.S. 228, 230–231 (1925)); *see also Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001) (applying "entry fiction" to reject noncitizen's habeas challenge to "the procedures used to withdraw his parole under the Mariel Cuban regulations, 8 C.F.R. § 212.12," reasoning that while the noncitizen had "been physically present in the United States for more than twenty years," the law treated him as "detained at the border and hence as never having effected entry into this country," and concluding that the noncitizen had no "liberty interest in being released on parole").

No. 26-cv-264

noncitizen,[18] § 1226(a) permits an immigration officer executing an arrest warrant to make an initial determination to detain or release on bond or conditional parole a noncitizen while a removal proceeding is pending, and permits a noncitizen who is so detained to seek review of that custody determination through a bond redetermination hearing at which the noncitizen bears the burden to show that release is warranted. 8 U.S.C. § 1226(a); 8 C.F.R. §§236.1(c)(8) and (d)(1); *see also Matter of Yajure Hurtado*, 29 I.&N. Dec. 216, 218 (BIA 2025) (discussing discretionary detention under § 1226(a) and regulations governing release); *Matter of Adeniji*, 22 I.&N. Dec. 1102, 1111-13 (BIA 1999) (interpreting 8 C.F.R. § 236.1(c)(8) as placing the burden of proof on the noncitizen to show "to the satisfaction of" the immigration judge and the Bureau of Immigration Appeals that the noncitizen's release would not pose a danger to the community and that the noncitizen is likely to appear for any future immigration proceeding). Either party may appeal the immigration judge's bond determination to the BIA. *See* 8 C.F.R. §§ 1003.19, 1003.38, 1236.1(d).[19]

---

[18] Though no party suggests it applies here, § 1226(c) requires the Attorney General to take custody of and detain any noncitizen "who falls into one of the enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 303 (citing § 1226(c)(1)). The first four enumerated categories include any noncitizen who is inadmissible or deportable for having committed certain criminal offenses or for having engaged in terrorist activities. 8 U.S.C. § 1226(c)(1)(A)-(D). A fifth category, includes any noncitizen who is "inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of [Title 8]; and is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of" specific criminal offenses. 8 U.S.C. § 1226(c)(1)(E). The Attorney General "'may release" noncitizens subject to detention under § 1226(c) "only if the Attorney General decides" that witness-protection purposes necessitate release "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4); *Jennings*, 583 U.S. at 303.

[19] Both parties mention § 1226(b), but it has no application here. Under subsection (b), the Attorney General "at any time may revoke a bond or parole authorized under [§

*(footnote continued)*

No. 26-cv-264

2

Petitioner contends his "detention is governed by § 1226(a) and he is legally entitled to a bond redetermination hearing." Dkt. 2 at 13, 15. Relying on the plain language of § 1225(b)(2)(A), the statutory framework, legislative history, and longstanding agency practice, he argues that though he may be an "applicant for admission," § 1225(b)(2)(A) does not require his detention because when ICE detained him in April 2026 he was not actively "seeking admission" even though his application for adjustment of status remained pending,[20] he had resided in the United States "for more than two years," and ICE detained him in the interior of the United States, not as part of the in-spection process at a port of entry. *Id.* at 12-19.

Respondents contend § 1225(b)(2)(A) requires Petitioner's detention because he is an "applicant for admission," has no "lawful status" given that

---

1226(a)], rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b); *see also* 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9) ("When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director [and certain other federal officers] in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled."). "[N]otwithstanding the breadth of [§1226(b)'s] statutory language, the [BIA] has recognized an important implicit limitation on [this] authority. The BIA has held that 'where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017) (quoting *Matter of Sugay*, 17 I.&N. Dec. 637, 640 (BIA 1981)), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Petitioner discusses § 1226(b) in the context of his Fifth Amendment claim, and it appears inform his view that ICE must show "changed circumstances" to justify his "re-detention" because he was paroled into the United States. Dkt. 2 at 22-23. But Petitioner alleges he was paroled into the United States under § 1182(d)(5)(A), not § 1226(a). So, as Respondents assert, § 1226(b) does not apply. Moreover, Petitioner's humanitarian parole was not revoked; rather, it automatically terminated on December 13, 2025. Consequently, Petitioner has not shown that § 1226(b) or the BIA's "change of circumstance" limitation has any relevance in this case.

[20] *See Ortiz-Bouchet v. U.S. Att'y Gen.*, 714 F.3d 1353, 1356 (11th Cir. 2013) ("We have previously held that the definition of 'admission' in 8 U.S.C. § 1182(h) is unambiguous and 'does not encompass a post-entry adjustment of status.'") (quoting *Lanier v. U.S. Att'y Gen.*, 631 F.3d 1363, 1366 (11th Cir. 2011)).

14

No. 26-cv-264

his parole terminated on December 13, 2025, and is inadmissible under § 1182(a)(6)(A) as "an alien without admission or parole" and under § 1182(a)(7) because he lacks valid entry documents. Dkt. 8 at 2, 6-7, 10. They further contend Petitioner is not owed a bond hearing because he is not detained under § 1226(a) and "has not even been in the United States three years." *Id.* at 7.

Although barely evident from the briefs, the dispute over whether § 1225(b)(2)(A) requires detention of all noncitizens deemed "applicants for admission" or of only those "applicants for admission" actively "seeking admission" is a dispute that most federal district courts (including this one) have resolved in favor of Petitioner's position. *See, e.g., Leonardo G.Z.*, 820 F. Supp. 3d at 1255-58 & n.17 (noting in December 2025 that hundreds of federal district decisions had addressed the issue of DHS's then-recent decision to apply § 1225(b)(2)(A) to all "applicants for admission"; independently considering the issue; and rejecting "DHS's expansive reading of § 1225(b)(2)(A)" as applying to "applicants for admission" who unlawfully entered the United States and were detained by ICE after residing in the United States for years but were not "seeking admission");[21] *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 n.22 (S.D.N.Y. 2025) (collecting cases decided as of late November 2025, demonstrating a majority of federal district courts had "rejected DHS's view that *all* noncitizens who came into the United States illegally, but since have been living in the United States *must be detained* until their removal proceedings are completed" (emphasis in original)); *Romero v. Hyde*, 795 F. Supp. 3d 271, 282 (D. Mass. 2025) (citing its own prior

---

[21] As discussed in *Leonardo G.Z.*, the DHS adopted a policy statement in July 2025 that "instructs ICE to treat any 'applicant for admission" as subject to mandatory detention under § 1225(b)(2)(A) and as ineligible for release from ICE custody unless through a grant of discretionary parole under 8 U.S.C. § 1182(d)(5)(A)," and the BIA subsequently endorsed that view in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, holding that immigration judges lack authority to hear bond requests or grant bond to noncitizens who are "applicants for admission." *Leonardo G.Z.*, 820 F. Supp. 3d at 1248-49 (footnotes omitted).

No. 26-cv-264

decision rejecting DHS's reading of § 1225(b)(2)(A) as applying to all applicants for admission as "contrary to the agency's own implementing regulations . . . its published guidance . . . the decisions of its immigration judges (until very recently) . . . decades of practice . . . the Supreme Court's gloss on the statutory scheme . . . and the overall logic of our immigration system" and, "putting all that to the side" also reasoning that DHS's reading of "alien seeking admission" and "applicant for admission" as synonymous phrases "is plainly incorrect").

Other federal district courts though have adopted Respondents' view that § 1225(b)(2)(A) mandates detention for all "applicants for admission." *See, e.g., Cisneros*, 820 F. Supp. 3d at 1270 (considering the "structure of [the] sentence" in § 1225(b)(2)(A) and finding "no plausible basis for interpreting the phrase 'an alien seeking admission' to have a narrower meaning than 'an alien who is an applicant for admission'"); *Barco Mercado*, 811 F. Supp. 3d at 494 n.23 (collecting "the minority of cases" decided as of late November 2025 that had adopted DHS's position that all "applicants for admission" are necessarily "seeking admission" and thus subject to mandatory detention under § 1225(b)(2)(A)); *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140 (S.D. Cal. 2025) ("By the plain language of § 1225(a)(1), then, [two noncitizen habeas petitioners who entered the United States without inspection or parole and resided in the United States] are 'applicants for admission' and thus subject to the mandatory detention provisions of 'applicants for admission' under § 1225(b)(2).").

Thus far, six circuit courts have considered this same issue, resulting in a circuit split. The Fifth and Eighth Circuits have decided the issue in accord with Respondents' position. *See Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). The Second, Sixth, Seventh, and Eleventh Circuits have decided the issue in accord with Petitioner's position. *See Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026);

16

No. 26-cv-264

*Barbosa da Cunha*, 175 F.4th 61 (2nd Cir. 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025).[22] The Tenth Circuit has not yet weighed in.

In the absence of binding authority, this Court must determine for itself the best reading of § 1225(b)(2)(A).

a

Courts begin with the text when litigants disagree about the meaning of a statute. *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018). The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Ceco Concrete Constr., LLC v. Centennial State Carpenters Pension Tr.*, 821 F.3d 1250, 1258 (10th Cir. 2016) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). "If the language is plain and unambiguous, '[the court's] inquiry must cease and the plain meaning of the statute controls.'" *Id.* (quoting *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1225 (10th Cir. 2014)). But "the plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341; *see also Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) ("The words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). If the text is not plain, the court must "use every tool at [its] disposal to determine the best reading of the statute and resolve the ambiguity." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

In applying those tools, a court must "give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which

---

[22] The Seventh Circuit decided the issue in the context of rejecting the Government's defense to a request for a preliminary injunction enjoining DHS from making warrantless arrests of noncitizens. *Castañon-Nava*, 161 F.4th at 1052, 1060-62.

No. 26-cv-264

implies that the legislature was ignorant of the meaning of the language it employed." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883). "'[E]very clause and word of a statute' should have meaning." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Montclair*, 107 U.S. at 152). This includes titles and section headings. *See Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947) (describing statutory titles and section headings as "tools available for the resolution of a doubt," but noting "the wise rule" that titles and section headings "cannot undo or limit that which the text makes plain"). "[A] title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring in judgment).

b

As discussed, § 1225(b)(2)(A) requires detention until the conclusion of a removal proceeding, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see also Jennings*, 583 U.S. at 299, 302 (explaining that, under § 1225(b)(2)(A) "detention must continue . . . until removal proceedings have concluded").

Respondent's primary argument for detaining Petitioner under § 1225(b)(2)(A) is that Petitioner is an "applicant for admission." Dkt. 8 at 6-7. But Petitioner does not seriously dispute, nor could he, that he is an "applicant for admission." *See* Dkt. 2 at 18. The INA broadly defines an "applicant for admission" to include: (1) a noncitizen "present in the United States who has not been admitted" or a noncitizen "who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Petitioner initially fit within the second category of noncitizens. He arrived in the United States at a port of entry in 2023 and, though it appears he may have been subject to expedited

No. 26-cv-264

removal because he lacked valid entry documents, *see* 8 U.S.C. § 1225(b)(1)(A)(i), he was placed in regular removal proceedings and was paroled into the United States until December 13, 2025. By operation of law, from December 15, 2023, through December 13, 2025, Petitioner was physically present in the United States with DHS's permission but without admission. *See* 8 U.S.C. § 1182(d)(5)(A) (providing that parole under § 1182(d)(5)(A) "shall not be regarded as an admission of the alien").[23] Nonetheless, by remaining in the United States after his parole expired he shifted into the first category of noncitizens because he was present in the United States, no longer permitted to be here as a temporary parolee, and had not been admitted. Thus, when ICE detained him in April 2026, Petitioner was present in the United States and had not been admitted. The immigration officer who processed Petitioner in Tulsa appeared to agree with this point. *See* Dkt. 8-2 at 19 (determining Petitioner had "no pending or approved petitions allowing for *lawful residence, admission, and or presence* in the United States" (emphasis added)). Both at the time of his initial arrival in 2023 and the time of his apprehension in Oklahoma in 2026, Petitioner was an "applicant for admission."

Petitioner instead contends that the plain language of § 1225(b)(2)(A) requires detention of an "applicant for admission" only if an examining immigration officer determines, typically through the initial border inspection process under § 1225(b), that a noncitizen is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted." Dkt. 2 at 12-19; *see* 8 U.S.C. § 1225(b)(2)(A).

---

[23] Respondents do not address the language in § 1182(d)(5)(A), and no one discusses the "entry fiction" doctrine. *See supra* n.17. Without adequate briefing from either party, the Court declines to decide whether that doctrine would require this Court to effectively treat Petitioner as if stopped at the border and ignore that Petitioner was present in the United States, without being admitted or paroled, for the roughly four months he resided in the United States after his parole expired.

No. 26-cv-264

Respondents counter this argument by wholly ignoring the phrase "seeking admission," a phrase found in the plain text of § 1225(b)(2)(A) but mentioned not once in Respondents' brief. *See* Dkt. 8, generally. As the Court understands Respondents' position, a finding that Petitioner is an "applicant for admission," combined with his alleged inadmissibility, demonstrates that § 1225(b)(2)(A) requires his detention. Dkt. 8 at 2, 6-7. If this is Respondents' argument, the Court rejects it for three reasons.

First, Respondents' reading of § 1225(b)(2)(A) as applying to all "applicants for admission" effectively reads out of the statute a phrase placed there by Congress—the phrase "seeking admission." *See Polansky*, 599 U.S. at 432 ("'[E]very clause and word of a statute' should have meaning."). A natural reading of "seeking admission" is that it identifies which "applicants for admission" are subject to mandatory detention. Namely, those who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). *See, e.g.*, *Leonardo G.Z.*, 820 F. Supp. 3d at 1256-57 (reasoning that "seeking admission" describes "a subset of applicants for admission who are subject to mandatory detention pending removal, namely those applicants for admission *actively seeking lawful entry* into the United States as part of the inspection process that occurs at the Nation's borders and ports of entry and who are not clearly and beyond a doubt entitled to lawful entry" (emphasis added)); *Barco Mercado*, 811 F. Supp. 3d at 495 (concluding that the "language of [§ 1225](b)(2)(A) makes clear that it applies only if three criteria are met. The noncitizen must be (i) an "applicant for admission," (ii) "seeking admission," and (iii) "not clearly and beyond a doubt entitled to be admitted"). Put simply, reading § 1225(b)(2)(A) as applying to all applicants for admission who may be inadmissible, as Respondents appear to do here, contravenes the plain text of § 1225(b)(2)(A).

Second, Respondents' reading of § 1225(b)(2)(A) ignores the overall structure of § 1225. *See Roberts*, 566 U.S. at 101 ("The words of a statute must be read in their context and with a view to their place in the overall statutory

No. 26-cv-264

scheme."). To be sure, § 1225(a)(1) broadly defines "applicant for admission" to include a noncitizen "present in the United States who has not been admitted." But the titles within § 1225 show that this section generally applies to noncitizens arriving in the United States at borders and ports of entry, not to noncitizens present in the United States without being admitted. *See Yates*, 574 U.S. at 552 (Alito, J., concurring in judgment) ("[A] title is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest."). Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The main subsections are (a) "Inspection"; (b) "Inspection of applicants for admission"; (c) "Removal of aliens inadmissible on security and related grounds"; and "(d) "Authority relating to inspections." Reading further, § 1225(b)(1) is titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," and § 1225(b)(2) is titled, "Inspection of other aliens." Considering these titles, as well as the substance of all provisions found within § 1225, most provisions found therein relate to inspection and removal of noncitizens who are arriving in the United States, presenting themselves for inspection at a port of entry, and applying for lawful entry to the United States. And the phrase "certain other aliens who have not been admitted or paroled" logically refers to noncitizens described in § 1225(b)(1)(A)(iii)(II). As previously discussed, these are noncitizens designated by the Attorney General as subject to expedited removal for the inadmissibility grounds identified in § 1225(b)(1)(A)(i) "who ha[ve] not been admitted or paroled into the United States" and who have not been physically present in the United States for at least two years before the date an immigration officer makes a determination of inadmissibility under § 1225(b)(1)(A). 8 U.S.C. § 1225(b)(1)(A)(iii)(II). In short, the overall structure of § 1225 supports Petitioner's view that § 1225(b)(2)(A) applies to some, but not *all*, applicants for admission who are present in the United States without being admitted or paroled.

No. 26-cv-264

Third, aside from being contrary to the plain text of § 1225(b)(2)(A) and the overall structure of § 1225, Respondents' broad reading of § 1225(b)(2)(A) as applying to all applicants for admission who may be inadmissible ignores *Jennings*'s explanation of the interplay between §§ 1225 and 1226. According to *Jennings*, § 1225 guides the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien *seeking to enter* the country is admissible," whereas § 1226 "applies to aliens *already present* in the United States." *Id.* at 287, 288, 303 (emphases added). Likewise, Respondents ignore that ICE applied § 1226(a), in accordance with *Jennings*'s guidance, when it arrested Petitioner on an administrative warrant near Ponca City, Oklahoma, and determined he had no basis for "lawful residence, admission and or presence in the United States." Dkt. 8-2 at 19.

Having independently considered the plain language of § 1225(b)(2)(A) in the context of § 1225's overall structure and the broader statutory framework governing pre-removal detention of noncitizens, including § 1226, this Court concludes that Petitioner is not subject to mandatory detention under § 1225(b)(2)(A). To recap, when ICE detained Petitioner in April 2026 following a traffic stop in Oklahoma, he was present in the United States but had not been admitted because he entered the United States through a grant of temporary parole and remained here at least four months beyond the expiration of that parole; he was not "seeking admission" even though he is deemed an "applicant for admission" under § 1225(a)(1); and ICE's authority to apprehend and detain him therefore flowed from § 1226(a), not § 1225(b)(2)(A).[24] The Court further finds that ICE properly relied on an

---

[24] Petitioner cites two cases that have likewise concluded that §1226(a) applies when, as here, a noncitizen was paroled into the United States under § 1182(d)(5)(A), stayed beyond the expiration of the applicable term of parole, and subsequently was detained by ICE within the interior of the United States. *See Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356 (W.D.N.Y. 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274 (E.D.N.Y.

*(footnote continued)*

No. 26-cv-264

administrative warrant to detain Petitioner, albeit without providing him the process he was due under the INA and implementing regulations—namely, the opportunity to seek release through a bond redetermination hearing while his removal proceeding is pending.[25]

## III

The Court grants the Petition in part on Petitioner's claim that he is unlawfully detained under § 1225(b)(2)(A), and dismisses the Petition in part on (1) the request for an order barring his transfer to another judicial district, (2) his Fifth Amendment due process claim, and (3) his request for attorney's fees and costs under the EAJA.

As a remedy for the statutory violation, the Court directs Respondents to provide Petitioner with a bond redetermination hearing, in accordance with 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(d), on or before 5:00 p.m. on June 30, 2026. On or before July 7, 2026, Respondents shall file written notice with the Court confirming compliance with this Order.

The dismissal of Petitioner's Fifth Amendment claim and his request for attorney's fees and costs under the EAJA is without prejudice. If Petitioner continues to be detained pending his removal proceeding, he may seek federal habeas relief in the future to challenge the length of his pre-removal detention if it becomes unconstitutionally prolonged. In addition, Petitioner may move for attorney's fees and costs under the EAJA in accordance with the deadlines and procedures of that statute and federal and local rules of civil procedure.

IT IS THEREFORE ORDERED that the Clerk of Court shall note on the record the substitution of David Venturella, Acting Director,

---

2025). Dkt. 2 at 19-20. Respondents do not discuss either case or direct this Court to any contrary authority. Dkt. 8.

[25] Because the Court concludes Petitioner is detained in violation of the INA, the Court does not reach his Fifth Amendment due process claim.

No. 26-cv-264

United States Immigration and Customs Enforcement, in place of Todd Lyons as Party Respondent.

IT IS FURTHER ORDERED that Sheriff Regalado is dismissed from this action, and the Clerk of Court shall terminate him as a party Respondent.

IT IS FURTHER ORDERED that the petition [Dkt. 2] is granted in part on Petitioner's claim that he is unlawfully detained under 8 U.S.C. § 1225(b)(2)(A), and dismissed in part on (1) his request for an order barring his transfer to another judicial district, (2) his Fifth Amendment due process claim, and (3) his request for attorney's fees and costs under the EAJA.

IT IS FURTHER ORDERED that Respondents shall provide Petitioner with a bond redetermination hearing, in accordance with 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(d), on or before 5:00 p.m. on June 30, 2026. On or before July 7, 2026, Respondents shall file written notice with the Court confirming compliance with this Order.

DATED this 22d day of June 2026.

JOHN D. RUSSELL
*United States District Judge*